**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **SECURITY NATIONAL INSURANCE COMPANY,** | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 1:22-CV-0622-LY** |
| | § | |
| **STAG POOLS, LLC,** | § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT STAG POOL LLC'S MOTION FOR SUMMARY JUDGMENT ON THE DUTY TO DEFEND

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ iii

**I.**    **SUMMARY OF THE ARGUMENT** ......................................................................... 1

**II.**   **SUMMARY JUDGMENT EVIDENCE** ..................................................................... 1

**III.**  **FACTUAL BACKGROUND** ..................................................................................... 2

**IV.**  **ARGUMENTS AND AUTHORITIES** ...................................................................... 5

     **A.**    **Standard of Review and Burden of Proof** ............................................ 5

     **B.**    **The Duty to Defend Standard** ................................................................ 6

     **C.**    **A Duty to Defend is Owed under the Security National Policy** ........ 8

          **1.**    **The "Insuring Agreement" under Coverage A is Triggered by Allegations of "Property Damage" caused by an "'Occurrence' During the Policy Period."** ................ 9

          **2.**    **The "Silica Exclusion Endorsement" Does Not Negate Coverage** ................................................................ 14

          **3.**    **The "Expected or Intended Injury" Exclusion Does Not Negate Coverage** ........................................ 17

**V.**    **CONCLUSION** ....................................................................................................... 20

**CERTIFICATE OF SERVICE** ............................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 5

*Bain Enterprises. LLC v. Mountain States Mutual Casualty Co.*,
   267 F. Supp. 3d 796 (W.D. Tex. 2016) ................................................................. 15

*Canutillo Independent School District v. National Union Fire Insurance Co. of Pittsburgh, Pa.*,
   9 F.3d 695 (5th Cir. 1996) ...................................................................................... 6

Celotex Corp. v. Catrett,
   477 U.S. 317, 327 (1986) ........................................................................................ 5

*Colony National Insurance Co. v. United Fire & Casualty Co.*,
   677 F. App'x 941 (5th Cir. 2017) ........................................................................... 7

*Crownover v. Mid-Continent Casualty Co.*,
   772 F.3d 197 (5th Cir. 2014) ................................................................................. 10

*D.R. Horton, Inc. v. American Guarantee & Liability Insurance Co.*,
   864 F. Supp. 2d 541 (N.D. Tex. 2012) ................................................................. 10

*Encompass Insurance Co. v. Hill*,
   No. 6:09-CV-460, 2013 WL 530280 (E.D. Tex. Feb. 12, 2013) ........................... 10

*Federated Mutual Insurance Co. v. Grapevine Excavation Inc.*,
   197 F.3d 720 (5th Cir. 1999) .................................................................................. 6

*Gore Design Completions, Ltd. v. Hartford Fire Insurance Co.*,
   538 F.3d 365 (5th Cir. 2008) .................................................................................. 7

*Guaranty National Insurance Co. v. Vic Manufacturing Co.*,
   143 F.3d 192 (5th Cir. 1998) .................................................................................. 6

*Harken Exploration Co. v. Sphere Drake Insurance*,
   261 F.3d 466 (5th Cir. 2001) ................................................................................. 11

*Indian Harbor Insurance Co. v. KB Lone Star, Inc.*,
   No. H-11-CV-1846, 2012 WL 3866858 (S.D. Tex. Sept. 5, 2012) ......................... 7

*Indian Harbor Insurance Co. v. Valley Forge Insurance Group*,
   535 F.3d 359 (5th Cir. 2008) ................................................................................. 12

*Lafarge Corp. v. Hartford Casualty Insurance Co.*,
   61 F.3d 389 (5th Cir. 1995) .................................................................................... 7

*Lawyers Title Insurance Corp. v. Doubletree Partners, L.P.*,
   739 F.3d 848 (5th Cir. 2014) .................................................................................. 6

*Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................ 5

*Mid-Continent Casualty Co. v. BFH Mining, Ltd.*,
   No. CIV.A. H-14-0849, 2015 WL 5178118 (S.D. Tex. Sept. 3, 2015) ................... 18

*Mid-Continent Casualty Co. v. JHP Development, Inc.*,
  557 F.3d 207 (5th Cir. 2009) .............................................................................. 7

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*,
  532 F.3d 398, 402 (5th Cir. 2008) ...................................................................... 10

*Northfield Insurance Co. v. Loving Home Care, Inc.*,
  363 F.3d 523 (5th Cir. 2004) .............................................................................. 7

*Trinity Universal Insurance Co. v. Employers Mutual Casualty Co.*,
  592 F.3d 687 (5th Cir. 2010) .............................................................................. 11

**State Cases**

*Boyce Iron Works, Inc. v. Southwestern. Bell Telephone Co.*,
  747 S.W.2d 785 (Tex. 1988) ............................................................................... 11

*D.R. Horton-Texas, Ltd. v. Markel International Insurance Co., Ltd.*,
  300 S.W.3d 740 (Tex. 2009) ............................................................................... 2

*Dallas National Insurance Co. v. Sabic Americas, Inc.*,
  355 S.W.3d 111 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ................... 17

*Don's Bldg. Supply, Inc. v. OneBeacon Insurance Co.*,
  267 S.W.3d 20 (Tex. 2008) ................................................................................. 12

*Duncan v. Cessna Aircraft Co.*,
  665 S.W.2d 414, 421 (Tex. 1984) ....................................................................... 9

*Farmers Texas County Mutual Insurance Co. v. Griffin*,
  955 S.W.2d 81 (Tex. 1997) ................................................................................. 8

*Gehan Homes, Ltd. v. Employers Mutual Casualty Co.*,
  146 S.W.3d 833 (Tex. App.—Dallas 2004, pet. denied) ..................................... 11

*Great American Lloyds Insurance Co. v. Vines-Herrin Custom Homes, LLC*,
  No. 05-15-00230-CV, 2016 WL 4486656 (Tex. App.—Dallas Aug. 25, 2016, pet. denied) .... 9

*GuideOne Elite Insurance Co. v. Fielder Road Baptist Church*,
  197 S.W.3d 305 (Tex. 2006) ........................................................................... 7, 15

*Gunn Infiniti, Inc. v. O'Byrne*,
  996 S.W.2d 854 (Tex. 1999) ............................................................................... 11

*Heyden Newport Chemical Corp. v. Southern General Insurance Co.*,
  387 S.W.2d 22 (Tex. 1965) ................................................................................. 7

*Lamar Homes, Inc. v. Mid-Continent Casualty Co.*,
  242 S.W.3d 1 (Tex. 2007) ........................................................................ 9, 10, 13

*Loya Insurance Co. v. Avalos*,
  610 S.W.3d 878 (Tex. 2020) ............................................................................... 15

*Monroe Guaranty Insurance Corp. v. BITCO General Insurance Corp.*,
  640 S.W.3d 195 (Tex. 2022) ........................................................................... 8, 16

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*,
    939 S.W.2d 139 (Tex. 1997) ................................................................. 7

*Pine Oak Bldrs., Inc. v. Great Am. Lloyds Ins. Co.*,
    279 S.W.3d 650, 656 (Tex. 2009) .......................................................... 8

*Reddy Ice Corp., v. Travelers Insurance Co.*,
    145 S.W.3d 337 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ................. 9

*State Farm Lloyds v. Kessler*,
    932 S.W.2d 732 (Tex. App.—Fort Worth 1996, writ denied) ......................... 10

*Stumph v. Dallas Fire Insurance Co.*,
    34 S.W.3d 722 (Tex. App.—Austin 2000, no pet.) ................................... 11

*Texas Property & Casualty Insurance Guarantee Association/Southwest Aggregates, Inc. v.*
    *Southwest Aggregates, Inc.*,
    982 S.W.2d 600 (Tex. App.—Austin 1998, no pet.) ................................. 12

*Tony Gullo Motors I, L.P. v. Chapa*,
    212 S.W.3d 299 (Tex. 2006) ............................................................. 11

*Trinity Universal Insurance Co. v. Cowan*,
    945 S.W.2d 819 (Tex. 1997) ............................................................. 18

*Zurich America Insurance Co. v. Nokia, Inc.*,
    268 S.W.3d 487 (Tex. 2008) .......................................................... 7, 15

**Statutes**

TEX. BUS. & COM. CODE § 17.43 .............................................................. 11

TEXAS INS. CODE ANN. § 554.002 (West 2017) ............................................... 6

Defendant Stag Pools, LLC ("Stag Pools") hereby files this, its Motion for Summary Judgment on the Duty to Defend. Stag Pools respectfully would show this Court the following:

## I.    SUMMARY OF THE ARGUMENT

Determining the duty to defend in this case requires a simple, straightforward analysis of an insurance policy and underlying pleadings filed against Stag Pools in a lawsuit filed by Jeremy and Jennifer Brannon, which is captioned as No. 22-0350, *Jeremy Brannon and Jennifer Brannon v. Stag Pools, LLC*, in the 274th Judicial District Court of Hays County, Texas (the "Underlying Lawsuit"). Such an analysis will reveal that Plaintiff Security National Insurance Company ("Security National") has had and continues to have a duty to defend Stag Pools in the Underlying Lawsuit. Under Texas law, an insurer's duty to defend is triggered as long as *any* allegation against the insured raises even a *mere potential* for coverage under the policy. In the Underlying Lawsuit, the Third Amended Petition and the Fourth Amended Petition, which is now the live pleading in the Underlying Lawsuit, include allegations of "property damage" caused by an "occurrence," and Security National cannot meet its burden to establish that any policy exclusions apply to negate any potential for coverage. Because the Underlying Lawsuit is ongoing, the duty to indemnify is not ripe.

For these reasons, Stag Pools is entitled to a defense in connection with the Underlying Lawsuit, including retroactively to the date of tender of the Third Amended Petition and going forward through resolution of the Underlying Lawsuit.

## II.    SUMMARY JUDGMENT EVIDENCE

Under Texas law, the only evidence relevant to the determination of Security National's duty to defend is the primary insurance policy issued by Security National to Stag Pools and the

pertinent petitions filed against Stag Pools in the Underlying Lawsuit. Those documents are as follows:

- Policy No. SPP1796596, issued to Stag Pools LLC, with effective dates of January 22, 2021 to January 22, 2022 (the "Security National Policy")[1]; and

- Plaintiffs' Third Amended Petition, filed July 27, 2022, in the Underlying Lawsuit;[2]

- Plaintiffs' Fourth Amended Petition, filed February 24, 2023, in the Underlying Lawsuit.[3]

### III.   FACTUAL BACKGROUND

Stag Pools is a pool builder that specializes in the construction of luxury pools and spas in Austin and the surrounding area. In connection with the claims asserted in the Underlying Lawsuit, Stag Pools contracted with a homebuilder, Willis, Chappell & Bujan Custom Builders, Inc. ("WCB"), to build a pool at 13309 Meridian Park Boulevard in Austin. The pool was part of the home construction process for Jeremy and Jennifer Brannon (the "Brannons").

On February 23, 2022, the Brannons filed suit against Stag Pools for damage to their pool. On the next day, February 24, 2022, they filed an Amended Petition. In turn, Stag Pools filed a third-party petition against its concrete subcontractor, Easy Mix Concrete Services, LLC and its principal, Carlos Rodriguez. On June 14, 2022, the Brannons filed their Second Amended Petition.

---

[1] A true and correct copy of the Security National Policy is attached hereto as Exhibit 1. Although Security National also included a second policy as an attachment to its pleadings, the allegations in the Underlying Lawsuit are clear that the damage at issue occurred or was discovered in 2021, which was before that second policy incepted and, therefore, under Texas law, it cannot apply based on those allegations. Stag Pools reserves the right to claim that a duty to indemnify is owed should the Underlying Lawsuit establish that the damage first occurred during that second policy period. *See, e.g., D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 741 (Tex. 2009) ("We hold that the duty to indemnify is not dependent on the duty to defend and that an insurer may have a duty to indemnify its insured even if the duty to defend never arises.").

[2] A true and correct copy of the Third Amended Petition is attached hereto as Exhibit 2. Pursuant to Federal Rule of Evidence 201, Stag Pools requests that the Court take judicial notice of the Third Amended Petition filed within the court records of the 274th Judicial District Court of Hays County, Texas.

[3] A true and correct copy of the Fourth Amended Petition is attached hereto as Exhibit 3. Pursuant to Federal Rule of Evidence 201, Stag Pools requests that the Court take judicial notice of the Fourth Amended Petition filed within the court records of the 274th Judicial District Court of Hays County, Texas.

---

On July 27, 2022, the Brannons filed their Third Amended Petition. And, most recently, on February 24, 2023, the Brannons filed their Fourth Amended Petition, which is the now-live pleading in the Underlying Lawsuit. The allegations in the Third and Fourth Amended Petitions triggered Security National's duty to defend Stag Pools in the Underlying Lawsuit and that duty continues to exist.[4]

In the Third and Fourth Amended Petitions, the Brannons contend that, "[i]n 2021, Plaintiffs [*i.e.*, the Brannons] observed distress and cracking in the concrete of the Pool. Plaintiffs reported their observations to Stag Pools."[5] They allege that an expert report indicated that their pool cracked and suffered distress because of "an internal expansion mechanism caused by alkali-aggregate reaction (AAR)."[6] The Brannons further claim that "the only remediation is to remove the existing concrete and reconstruct the swimming pool."[7] "In addition to the demolition of the existing pool, this process will also require the existing deck, landscaping and part of irrigation system to be removed and replaced. This process will take several months, during which time Plaintiffs will be deprived of their use and enjoyment of the pool as well as the inconvenience of having to live in a construction zone."[8]

In the Third Amended Petition, the Brannons asserted causes of action against Stag Pools for breach of contract, common law fraud, negligence, negligent misrepresentation, violations of

---

[4] While Stag Pools tendered the earlier filed petitions in the Underlying Lawsuit to Security National, Security National denied coverage, and Stag Pools does not seek any recovery related thereto, as other insurers have accepted their obligations to defend Stag Pools in connection with those petitions.

[5] *See* Exhibit 2, at 2; Exhibit 3, at 2.

[6] *See* Exhibit 2, at 2; Exhibit 3, at 2.

[7] *See* Exhibit 2, at 3; Exhibit 3, at 3. Note that "remediation" is replaced with "remedy" in the Fourth Amended Petition.

[8] *See* Exhibit 2, at 3; Exhibit 3, at 3.

the deceptive trade practices act (the "DTPA").[9] In the Fourth Amended Petition, the Brannons added causes of action against Stag Pools for breach of express warranty and breach of implied warranty.[10] In addition to their damages for the costs of repair and lost use, the Brannons seek recovery of their attorneys' fees and costs, as well as pre- and post-judgment interest as allowed by law.[11]

In the meantime, Security National initially filed this lawsuit on June 27, 2022, seeking a declaration from the Court that it had no duty to defend Stag Pools in the Underlying Lawsuit [Doc. 1]. On July 12, 2022, Security National filed its First Amended Complaint [Doc. 6], seeking the same relief with respect to the Brannons' Second Amended Petition in the Underlying Lawsuit. Then, on August 19, 2022, Security National filed its Second Amended Complaint [Doc. 12], again seeking the same relief but with respect to the Brannons' Third Amended Petition in the Underlying Lawsuit. With the Court's leave [Doc. 11], Stag Pools answered Security National's Second Amended Complaint on September 2, 2022 [Doc. 13]. Thereafter, another of Stag Pools' insurers that had accepted its defense obligation, Cincinnati Specialty Underwriters Insurance Company ("CSU"), moved to intervene in this lawsuit [Doc. 15], which was granted [Doc. 21]. In the Complaint in Intervention [Doc. 22], Cincinnati asserted claims against Security National, seeking recovery of defense costs incurred in defense of the Brannons' Third Amended Petition, as well as a finding that Security National must share in the ongoing defense costs with Cincinnati (and a third insurer, Scottsdale Insurance Company, which is not a party to this litigation).

---

[9] *See* Exhibit 2, at 3–6.

[10] *See* Exhibit 3, at 7–8.

[11] *See* Exhibit 2, at 6; Exhibit 3, at 8–9.

Subsequently, the Fourth Amended Petition was filed in the Underlying Lawsuit and tendered to Security National.[12] Security National ignored the tender.

As noted above, Stag Pools previously tendered the petitions from the Underlying Lawsuit to Security National, but Security National is not providing a defense and refuses to do so. Instead, Security National filed this lawsuit in an effort to avoid its obligations altogether. Because a duty to defend is owed in connection with the claims asserted against Stag Pools in the Third and Fourth Amended Petitions filed in the Underlying Lawsuit, Stag Pools is entitled to summary judgment on Security National's claims.

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Standard of Review and Burden of Proof

"The Federal Rules of Civil Procedure have . . . authorized motions for summary judgment upon proper showing of the lack of a genuine, triable issue of material fact."[13] Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14] To avoid summary judgment, the burden placed on the respondent is to produce evidence of a genuine issue of material fact.[15] The substantive law determines which facts are "material," and a material fact is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party.[16]

---

[12] *See* Affidavit of Douglas P. Skelley, attached hereto as Exhibit 4, and accompanying Exhibit 4-1.

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[14] *Id.* at 322.

[15] *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In an insurance case, the burden is on the insured to show that a claim against it potentially is within the scope of coverage under the policy.[17] Thus, the insured must first meet its burden to establish that the facts alleged in the plaintiff's pleadings state a claim against the insured that is potentially within the scope of coverage.[18] If, however, the insurer relies on policy exclusions or other limitations to defeat the duty to defend, the burden shifts to the insurer to disprove coverage.[19] All exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured.[20] Once the insurer proves an exclusion applies, the burden then shifts back to the insured to show the claim falls within an exception to the exclusion.[21] Here, Security National relies, in part, on exclusions to avoid its defense obligation and, therefore, bears the burden of establishing that those exclusions apply to negate all potential for coverage. Security National cannot meet that heavy burden.

## B.     The Duty to Defend Standard

This case involves a duty to defend analysis based on the "eight corners" rule. The issue presented is whether the allegations in the Third and Fourth Amended Petitions filed in the Underlying Lawsuit establish that a potential for coverage exists and, thus, whether Security National had and continues to have a duty to defend Stag Pools in the Underlying Lawsuit.[22] Because it is possible to determine from the face of the Third and Fourth Amended Petitions that

---

[17] *See Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999).

[18] *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996).

[19] *See Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998); *see also* TEX. INS. CODE ANN. § 554.002 (West 2017) .

[20] *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848 (5th Cir. 2014).

[21] *See Guaranty Nat'l*, 143 F.3d at 193.

[22] For purposes of clarity, Stag Pools does not seek any ruling on the duty to defend pertaining to the Original, Amended, or Second Amended Petitions filed in the Underlying Lawsuit.

---

Security National owed and continues to owe a defense, Stag Pools is entitled to judgment as a matter of law on the duty to defend.

Texas courts apply the "eight corners" rule to determine whether an insurer has a duty to defend.[23] The Supreme Court of Texas has explained the "eight corners" rule in the following way:

> Where the [complaint] does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.[24]

Citing the provision above, the Fifth Circuit has recognized that the "eight corners" rule is "very favorable to insureds because doubts are resolved in the insured's favor."[25] While courts cannot read facts into pleadings or imagine factual scenarios, they "may draw inferences from the petition that may lead to a finding of coverage."[26] "Even if the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered and some of which are not, the duty to defend arises if at least one of the claims is facially within the policy's coverage."[27] The Fifth Circuit has offered insurers the following advice: "When in doubt, defend."[28]

Although, the "eight corners" rule "remains the initial inquiry to be used to determine whether a duty to defend exists," the Supreme Court of Texas recently adopted a narrow exception

---

[23] *See Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528–35 (5th Cir. 2004); *Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, No. H-11-CV-1846, 2012 WL 3866858, at *5 (S.D. Tex. Sept. 5, 2012); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008); *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

[24] *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

[25] *See Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008).

[26] *Id.* (citations omitted).

[27] *Colony Nat'l Ins. Co. v. United Fire & Cas. Co.*, 677 F. App'x 941, 944 (5th Cir. 2017) (emphasis added) (quoting *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995)).

[28] *Gore Design*, 538 F.3d at 369.

---

to that rule (*i.e.*, the "*Monroe* Exception").[29] That exception only applies where "the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists."[30] Then, and only then, "Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved."[31] As will be shown below, Security National cannot establish the application of the *Monroe* Exception here.

On the other hand, while an analysis of the duty to defend is circumscribed by the "eight corners" rule and the recently adopted *Monroe* Exception, it is well settled in Texas that the "facts actually established in the underlying suit control the duty to indemnify."[32] When the liability lawsuit remains pending, any ruling on the duty to indemnify is premature, unless the same reasons that negate the duty to defend also negate any possibility that the insurer will have a duty to indemnify.[33] Because a duty to defend exists, the "*Griffin* Rule" does not apply here.

## C.    A Duty to Defend is Owed under the Security National Policy

In support of its refusal to provide a defense to Stag Pools, Security National makes several arguments:

- The "Silica Exclusion Endorsement" applies to bar coverage;

- A breach of contract claim is not a claim for "property damage" caused by an "occurrence";

---

[29] *See Monroe Guar. Ins. Corp. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 201–02 (Tex. 2022).

[30] *Id.* at 202.

[31] *Id.*

[32] *Pine Oak Bldrs., Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009).

[33] *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).

- Claims of intentional or fraudulent acts are not claims for "property damage" caused by an "occurrence"; and

- Alternatively, such claims are otherwise excluded by application of the "Expected or Intended Injury" exclusion;

Security National's position on each of these points is in error under prevailing Texas law.[34] Each of those arguments is addressed below in order of the policy terms.

### 1.    The "Insuring Agreement" under Coverage A is Triggered by Allegations of "Property Damage" caused by an "'Occurrence' During the Policy Period."

The Security National Policy broadly grants coverage in the Commercial General Liability ("CGL") Coverage Form, stating that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . caused by an 'occurrence.'"[35] Under the insuring agreement, the "property damage" must be caused by an "occurrence," defined as an accident,[36] and the damage must occur "during the policy period."[37]

Here, no dispute should exist (nor does it appear to) that the Underlying Lawsuit includes allegations of "property damage."[38] The Brannons contend that, because of "defective construction," they "observed distress and cracking in the concrete of the Pool."[39] Such distress and cracking is "physical injury" to "tangible property" and, as such, it is "property damage."[40]

---

[34] Texas law applies to interpretation of the Security National Policy because it was issued to Stag Pools in Texas to apply to the company's Texas operations. *See, e.g.*, *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) ("[I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Reddy Ice Corp.*, *v. Travelers Ins. Co.*, 145 S.W.3d 337, 346 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

[35] Exhibit 1 at 81.

[36] *Id.* at 95 (defining "occurrence").

[37] *Id.* at 81.

[38] *See* Doc. 12 (Security National's Complaint in which no contention exists that there is no "property damage").

[39] Exhibit 2 at 2.

[40] Exhibit 1 at 95 (defining "property damage"). *See, e.g.*, *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007) (holding that cracked concrete and sheetrock are "property damage" because it was "physical injury to tangible property"). *See also Great Am. Lloyds Ins. Co. v. Vines-Herrin Custom Homes, LLC*, No. 05-15-00230-CV, 2016 WL 4486656, at *6 (Tex. App.—Dallas Aug. 25, 2016, pet. denied) (citing *Lamar Homes* and recognizing

---

Security National, however, incorrectly contends that the "property damage" was not caused by an "occurrence" or an "accident." In determining whether an accident exists, Texas courts have held that even a deliberate act, if performed negligently, is an accident for purposes of a CGL policy, if the effect is not the intended or expected result.[41] Stated differently, deliberate acts constitute an accident unless: (1) the resulting damage was "highly probable" because it was "the natural and expected result of the insured's actions," (2) "the insured intended the injury," or (3) the insured's acts constitute an intentional tort, in which case, the insured is presumed to have intended the injury.[42]

In keeping with the definition of an "occurrence" as an "accident," Texas courts generally afford coverage for liability resulting in fortuitous damages but preclude coverage for damages that are the natural and probable consequence of intentional conduct.[43] In fact, the Supreme Court of Texas has spoken directly on the issue of "faulty workmanship" as an "occurrence."[44] In *Lamar Homes*, the insured's faulty workmanship resulted in damage to the home the insured built, including cracks in sheetrock and stone veneer.[45] As noted above, such damage allegations were allegations of "physical injury to tangible property."[46] Notably, the Court held that such damage

---

that cracks in the ceiling of a home, bowing windows, and a sagging ceiling caused by defective construction work constituted "property damage"); *D.R. Horton, Inc. v. Am. Guar. & Liab. Ins. Co.*, 864 F. Supp. 2d 541, 553 (N.D. Tex. 2012) (noting "Texas appears to be firmly committed to the proposition that a liability insurance policy can cover claims made against a home builder arising out of defective work if the defective work, in turn, caused physical damage to parts of the home's structure").

[41] *See Lamar Homes*, 242 S.W.3d at 8.

[42] *Lamar Homes*, 242 S.W.3d at 8–9; *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 402 (5th Cir. 2008); *Encompass Ins. Co. v. Hill*, No. 6:09-CV-460, 2013 WL 530280, at *3 (E.D. Tex. Feb. 12, 2013).

[43] *See State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 738 (Tex. App.—Fort Worth 1996, writ denied).

[44] *See generally Lamar Homes*, 242 S.W.3d 1. *See also Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 207 (5th Cir. 2014) (holding that insured's faulty workmanship that caused portions of home to need repairs that amounted to "property damage" was an "occurrence").

[45] *Lamar Homes*, 242 S.W.3d at 10.

[46] *Id.*

---

was the result of an "occurrence."[47] In doing so, the Supreme Court analyzed "whether [that] injury was intended or fortuitous, that is, whether the injury was an accident."[48] "The determination of whether an insured's faulty workmanship was intended or accidental is dependent on the facts and circumstances of the particular case."[49] In that case, the allegations were that the insured's defective construction was a product of its negligence.[50] No allegations existed that the insured intended or expected its work or its subcontractors' work to damage the underlying claimant's home.[51] Thus, there was an "occurrence."[52]

The same analysis applies here. While there are allegations of common law fraud and violations of the Deceptive Trade Practices Act, there also are allegations of negligence and breach of contract.[53] Texas law allows for the use of alternative allegations in pleadings.[54] "Alternative allegations of intentional or malicious conduct will not defeat the duty to defend if combined with allegations that would trigger coverage."[55] So long as any single allegations potentially triggers a duty to defend, the insurer owes a *complete* duty to defend.[56] Thus, here, the allegations of

---

[47] *Id.* at 9.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] Exhibit 2 at 3–4.

[54] *See, e.g.*, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 & n.3 (Tex. 2006) (noting that a party can plead more than one theory of liability, but the claimant only can recover under one theory) (citing *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) ("When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief."); *see also* Tex. Bus. & Com. Code § 17.43 (providing that "no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice"); *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 862 (Tex. 1999) (holding plaintiff must elect recovery under either DTPA or fraud after remand)).

[55] *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 843 (Tex. App.—Dallas 2004, pet. denied) (citing *Harken Exploration Co. v. Sphere Drake Ins.*, 261 F.3d 466, 474 (5th Cir. 2001); *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 729 (Tex. App.—Austin 2000, no pet.)).

[56] *See, e.g.*, *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 695 (5th Cir. 2010) (noting the "the

---

defective construction underlying the negligence and breach of contract theories of liability are enough to support a finding of an "occurrence" and trigger a duty to defend notwithstanding any other factual allegations asserted in support of alternative theories of liability that may trigger coverage or not.

Finally with respect to the insuring agreement, allegations exist that the damage at issue potentially occurred "during the policy period." Under Texas law, "property damage" happens when actual injury occurs to tangible property.[57] In the Underlying Lawsuit, the Brannons allege that, "[i]n 2021," they "observed distress and cracking in the concrete of the Pool."[58] As the Security National Policy was in effect from January 2021 until January 2022,[59] the damage potentially occurred during the policy period. As such, that element of the insuring agreement is satisfied as well for purposes of the duty to defend.

Security National's two asserted contentions regarding "property damage" and "occurrence" that are set forth in Plaintiff's Second Amended Complaint in this lawsuit do not change the result. In that regard, Security National claims that "[b]reach of contract claims do not constitute claims for 'property damage' caused by an 'occurrence'"[60] and Claims based on Stag Pools['] fraudulent or intentional misconduct do not constitute claims arising out of 'bodily injury' caused by an 'occurrence.'"[61] Regarding "breach of contract," the Supreme Court of Texas

---

uniform holdings of Texas courts that if even a single claim in a lawsuit potentially falls within an insurance policy's coverage, the insurer has a duty to provide a complete defense" (citing *Tex. Prop. & Cas. Ins. Guar. Ass'n/Sw. Aggregates, Inc. v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 606 (Tex. App.—Austin 1998, no pet.); *see also Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359 (5th Cir. 2008) (noting the "complete defense" obligation of an insurer under Texas law)).

[57] *See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008) ("[W]e hold that property damage under this policy [a standard CGL policy] occurred when actual physical damage to the property occurred.").

[58] Exhibit 2 at 2.

[59] Exhibit 1 at 25 (Declarations Page).

[60] Doc. 12 at 10.

[61] *Id.* at 10–11. Stag Pools assumes Security National meant to say, "property damage," and not, "bodily injury," as

---

addressed that issue squarely in *Lamar Homes*, finding that there is "no distinction between tort and contract damages" in the CGL policy.[62] The Supreme Court explained as follows:

> The insuring agreement does not mention torts, contracts, or economic losses; nor do these terms appear in the definitions of "property damage" or "occurrence." The CGL's insuring agreement simply asks whether "property damage" has been caused by an "occurrence." Therefore, any preconceived notion that a CGL policy is only for tort liability must yield to the policy's actual language.[63]

Because the factual allegations at issue in the Underlying Lawsuit are for "property damage" that was not caused intentionally, the fact that a viable cause of action is "breach of contract" is irrelevant and does not change the existence of an "occurrence."

In addition, the purported allegations of fraudulent or intentional misconduct also do not negate the existence of an "occurrence." As a practical matter, in the Third and Fourth Amended Petitions in the Underlying Lawsuit, not a single allegation exists of any "intentional misconduct," as Security National argues in its Second Amended Complaint.[64] Regardless, because alternative allegations exist of defective construction and negligence, that is all that is necessary to establish an "occurrence" for purposes of the duty to defend.

In sum, the elements of the insuring agreement are satisfied. The Brannons allege "property damage" caused by an "occurrence" and such damage occurred "during the policy period." Accordingly, unless an exclusion operates to negate *all potential* for coverage, Security National owed and continues to owe a defense to Stag Pools in the Underlying Lawsuit.

---

no dispute exists that no allegations exist of "bodily injury" in the Underlying Lawsuit.

[62] *Lamar Homes*, 242 S.W.3d at 13.

[63] *Id.*

[64] *Cf.* Exhibit 2 to Doc. 12 at 10–11.

### 2.    The "Silica Exclusion Endorsement" Does Not Negate Coverage

Having satisfied the elements of the insuring agreement, the burden turns to Security National to prove that the "Silica Exclusion Endorsement" applies to negate coverage. Security National cannot meet that burden.

The "Silica Exclusion Endorsement" bars coverage for, among other things, the following:

> "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".[65]

In addition, the exclusion also bars coverage for the following:

> Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.[66]

Put simply, in order for the exclusion to apply to the "property damage" at issue in the Underlying Lawsuit, the "property damage" must have arisen (in whole or in part) out of contact with, exposure to, existence of, or presence of "silica" or "silica-related dust." Or the monetary damages sought by the Brannons must be for costs incurred in abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of "silica" or "silica-related dust." Notably, though, the Third and Fourth Amended Petitions of the Underlying Lawsuit do *not* mention "silica" or "silica-related dust" at all.[67] Instead, the alleged cause of the damage at issue is an alkali-aggregate reaction ("AAR").[68] Accordingly, on its face, the exclusion simply cannot apply.

---

[65] Exhibit 1 at 115.

[66] *Id.*

[67] *See generally* Exhibit 2, Exhibit 3.

[68] Exhibit 2, at 2; Exhibit 3, at 2.

Based on its pleadings, Security National appears likely to argue that it can rely on extrinsic evidence—namely, an expert report—to prove that silica is an issue in the Underlying Lawsuit. For several reasons, Security National's argument must fail.

First, Security National contends that an expert report referenced but not attached to or incorporated in the Underlying Petition constitutes "undisputed evidence developed in the Underlying Action" that confirms that silica is at issue and triggers application of the exclusion.[69] Notably, no basis at all exists to contend that the evidence is "undisputed." Indeed, the description of the expert report in the Underlying Petition is contrary to Security National's explanation of the content of the report. And, regardless, even if it was undisputed in the Underlying Lawsuit, under well-established Texas law, "[f]acts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination [of the duty to defend] and allegations against the insured are liberally construed in favor of coverage."[70] "The duty to defend is not affected by facts ascertained before suit, *developed in the course of ligation*, or by the ultimate outcome of the suit."[71] To allow Security National to rely on the expert report here would turn Texas law on the duty to defend on its head.

Second, neither exception to the "eight corners" rule adopted by the Supreme Court of Texas is implicated. In that regard, the first adopted exception was for cases in which there is evidence of "collusive fraud" by the insured to create a duty to defend.[72] In its Complaint, Security National does not assert any claim of "collusive fraud" by Stag Pools nor does any exist, so that

---

[69] *See* Doc. 12 at 9.

[70] *Bain Enters. LLC v. Mountain States Mut. Cas. Co.*, 267 F. Supp. 3d 796, 806 (W.D. Tex. 2016) (Martinez, J.) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)).

[71] *Id.* (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)) (emphasis added).

[72] *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 882 (Tex. 2020) ("Thus, an insurer owes no duty to defend when there is conclusive evidence that groundless, false, or fraudulent claims against the insured have been *manipulated by the insured's own hands* in order to secure a defense and coverage where they would not otherwise exist.")

exception is not implicated. The second adopted exception—the "*Monroe* Exception"—also does not apply here.[73] That exception, adopted by the Supreme Court of Texas recently, only applies as follows:

> [I]f the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.[74]

The exception does not apply because there is no "gap" in the pleading; the extrinsic evidence presumably to be relied on by Security National (an expert report) does not go solely to coverage, as it necessarily engages in the merits of the liability action; the expert report contradicts factual allegations that the damage at issue was caused by alkali-aggregate reaction; and, as an expert report subject to challenge in the development of the Underlying Lawsuit, it does not conclusively establish the coverage fact to be proved.[75] Indeed, the evidence at issue, which overlaps with the evidence in the Underlying Lawsuit regarding the insured's alleged liability, provides a clear example of the rationale for exclusion of such extrinsic evidence, *i.e.*, so that evidence adduced in a coverage case by the insured's own insurer (that is not a part of the underlying pleadings at issue here) cannot be used to the insured's detriment in an underlying case. Simply put, Security National does not plead and cannot meet its burden to prove that the "*Monroe* Exception" applies here.

---

[73] *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 201–02 (Tex. 2022).

[74] *Id.* at 201–02.

[75] *Id.* at 202.

Because neither exception to the "eight corners" rule applies, and the pleading is devoid of any mention of "silica" or "silica-related dust," the "Silica Exclusion Endorsement" does not apply to negate the duty to defend. Thus, Security National cannot prevail on that issue.

### 3.    The "Expected or Intended Injury" Exclusion Does Not Negate Coverage

Alternatively, Security National argues that the "Expected or Intended Injury" exclusion applies to negate coverage as well. That exclusion bars coverage as follows:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.[76]

Texas courts have explained that the *subjective result* of an action must be expected or intended for the "Expected or Intended Injury" exclusion to apply. In *Dallas National Insurance Co. v. Sabic Americas, Inc.*, the insurer argued that, because the pleadings in the underlying lawsuits alleged "intentional conduct resulting in foreseeable damages" and such allegations fell squarely within the "Expected or Intended Injury" exclusion of the commercial general liability policy, the insurer did not owe the insured a defense or indemnification.[77] The insured allegedly knew that the gasoline additive they used would cause groundwater contamination, and because the plaintiffs alleged that the conduct was intentional, the carrier contended that there was no coverage. The insured, on the other hand, argued that the plaintiffs also alleged negligence along with the intentional tort claims; therefore, the exclusion should not negate Dallas National's defense and indemnification obligations—at least as to the negligence claims. The court held that "[t]he allegations of intentional conduct (which are not covered) are not sufficient to preclude a

---

[76] *See* Exhibit 1 at 82.

[77] 355 S.W.3d 111, 115 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

duty to defend when they are coupled with allegations of negligence (which may be covered), because if coverage exists 'for any portion of a suit, an insurer must defend the entire suit.'"[78]

The *Sabic* case illustrates that the "Expected or Intended Injury" exclusion only bars coverage for conduct that is intended to cause damage. In support of its holding, the court cited *Trinity Universal Insurance Co. v. Cowan*[79] for the proposition that there is a distinction between intending a deliberate act and intending the resulting damages. "For example, consider the hunter who deliberately fires a gun at what he believes to be a deer but is actually a person. Though firing the gun was intentional, the harm can reasonably be characterized as an 'accident.'"[80] Thus, intentional acts are not all excluded; rather, the exclusion only negates coverage where the insured *subjectively* intends to cause the damages.

The United States District court for the Southern District of Texas also addressed the application of the "Expected or Intended Injury" exclusion in *Mid-Continent Casualty Co. v. BFH Mining, Ltd.*[81] The insured there was sued by an individual, who suffered bodily injuries as a result of an accident involving an all-terrain vehicle ("ATV") in which he was a passenger. Mid-Continent argued that the owner of the ATV "could have expected [the] injury to occur. In support of this argument, Mid–Continent asserts that [the owner of the ATV] knew that [the driver] did not have a driver's license, knew that the ATV had experienced roll-overs before the day [the underlying plaintiff] was injured, and knew that the safety net on the ATV had been removed."[82] The court rejected Mid-Continent's reasoning and held the jury would be instructed as follows:

---

[78] *Id.* at 118 (citations omitted).

[79] 945 S.W.2d 819, 828 (Tex. 1997).

[80] *See id*. Although addressing this issue in the context of the insuring agreement's requirement of an "occurrence," it is equally applicable to the discussion of the application of an "Expected or Intended Injury" exclusion.

[81] No. CIV.A. H-14-0849, 2015 WL 5178118, at *1 (S.D. Tex. Sept. 3, 2015).

[82] *Id.*

---

> The "Expected or Intended" injury exclusion only excludes an injury which the insured intended, not one which the insured caused, however intentional the injury-producing act. What makes injuries or damages expected or intended are the knowledge and intent of the insured. It is not enough that an insured was warned that damages might ensue from its actions, or that, once warned, an insured decided to take a calculated risk and proceed as before. Recovery will be barred only if BFH intended Bellon's injury, or if his injury was expected by BFH because it knew that the injury was highly probable because it was the natural and expected result of BFH's actions.[83]

Based on the foregoing case law, the "Expected or Intended Injury" exclusion applies only when the insured subjectively intended the injury or expected that its conduct would cause the injury because it was highly probable and was the natural and expected result of the insured's actions. Here, although the Brannons assert a cause of action for common law fraud, they also assert claims for negligence and violations of the Deceptive Trade Practices Act (the "DTPA").[84] Those latter claims are supported by factual allegations of defective construction and the use of improper materials.[85] Most notably, though, no allegations exist that Stag Pools built the pool defectively with the intention that it cause damage to itself or that it would require the destruction of neighboring property in order to be repaired. Simply put, the pertinent pleadings in the Underlying Lawsuit do not contain any allegations that the injuries—whether bodily injury or property damage—were subjectively intended.[86] As such, the "Expected or Intended Injury" exclusion clearly does not apply to negate the duty to defend, and Security National cannot prevail on its argument.

---

[83] *Id*. at *2.

[84] Doc 12-2 (Exhibit B) at 3–5.

[85] *Id.* at 2.

[86] Even the common law fraud claim is based only on a representation that the pool "would be built with concrete that met industry standards." *Id.* at 4. That cause of action does not include any contention that Stag Pools intended for property damage to occur.

---

## V.   CONCLUSION

In sum, as a matter of law, Security National had and continues to have a duty to defend Stag Pools in the Underlying Lawsuit since tender of the Third Amended Petition. In the Third and Fourth Amended Petitions, the Brannons assert claims for "property damage" caused by an "occurrence" that took place "during the policy period." Arguments that no "occurrence" exists because the Brannons asserted a cause of action for "breach of contract" or because the Brannons included alternative allegations of intentional or fraudulent conduct simply fail under Texas law. In addition, neither the "Silica Exclusion Endorsement" nor the "Expected or Intended Injury" exclusion applies on their face. While Security National likely will contend that it is entitled to the use of extrinsic evidence to negate its obligations, Security National cannot and will not satisfy its burden to establish that any exception to the "eight corners" rule exists. At bottom, under the "eight corners" rule, a duty to defend is owed, and Stag Pools is entitled to a declaration in that regard.

For all of these reasons, Stag Pools has satisfied its burden to show that the insuring agreement under the Policy is met by the allegations in the Third and Fourth Amended Petitions in the Underlying Lawsuit, and Security National cannot meet its burden to show that any exclusions apply. As such, Stag Pools respectfully requests that the Court declare that Security National had and continues to have a duty to defend Stag Pools in the Underlying Lawsuit with respect to both the Brannons' Third Amended Petition and their Fourth Amended Petition.

Respectfully submitted,

**SHIDLOFSKY LAW FIRM, PLLC**

By:*/s/ Douglas P. Skelley*
Douglas P. Skelley
Attorney-in-Charge
Texas Bar No. 24056335
doug@shidlofskylaw.com
Rebecca DiMasi
Texas Bar No.: 24007115
rebecca@shidlofskylaw.com
7200 North Mopac Expwy., Suite 430
Austin, Texas 78731
Tel: (512) 685-1400
Fax: (866) 232-8710

**ATTORNEYS FOR DEFENDANT
STAG POOLS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on May 3, 2023, a copy of the foregoing document was filed through the Court's CM/ECF system, which will provide electronic notice to all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Douglas P. Skelley*
Douglas P. Skelley